UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIRLEY CASPER, as trustee of the Shirley Ann Casper family trust and executrix of the estate of Billy Casper, deceased, | Case No.: 20-CV-125-CAB-LL |
| Plaintiff, | **ORDER ON MOTION TO DISMISS OR TRANSFER FIRST AMENDED COMPLAINT** |
| v. | [Doc. No. 18] |
| BILLY CASPER GOLF MANAGEMENT, INC., | |
| Defendant. | |

This is a dispute between a citizen of Utah and a Virginia company related to a worldwide endorsement agreement governed by Virginia law that was executed seventeen years ago by Plaintiff's now-deceased husband.  This dispute's connection to this district is, to put it charitably, limited.  Unsurprisingly, Defendant has filed a motion to dismiss this lawsuit or in the alternative transfer it to the United States District Court for the Eastern District of Virginia, where a substantially similar lawsuit filed by Defendant four months before this one is pending.  For the reasons discussed below, the motion is granted in part, and this case is stayed pursuant to the first-to-file rule until the Virginia district court rules on Plaintiff's pending motion to dismiss for lack of personal jurisdiction.

## I.    Background

The instant motion argues that if the Court declines to dismiss or transfer the case on venue/abstention grounds, it should dismiss the complaint for failure to state a claim. Because the motion is granted based on the first-to-file rule, the Court does not consider

the sufficiency of the first amended complaint ("FAC") itself.  Accordingly, the facts and allegations recounted below include only those relevant to the issue of whether this case should be dismissed or transferred in favor of the earlier filed lawsuit pending in the Eastern District of Virginia.

Billy Casper was a professional golfer who played on the PGA Tour from the 1950's to the 1970's.  [Doc. No. 12 at ¶ 1.]  On November 14, 2003, Mr. Casper executed an endorsement agreement (the "Agreement") with Defendant Billy Casper Golf Management, Inc. ("BCG"), a Virginia company with its principal place of business in Virginia that manages, leases, and owns golf courses.  [Doc. No. 12 at 29, 34.]  At the time, Mr. Casper resided, along with his wife, Plaintiff Shirley Casper, in San Diego County, California.  [*Id.*]

The Agreement defined the "Contract Period" as "that period of time commencing April 1, 2003 and concluding March 31, 2013, or as sooner terminated or extended, in accordance with the terms and conditions set forth herein."  [*Id.*]  The Agreement allowed BCG to use "the name Billy Casper, photographs, signature, and such other endorsement endeavors as may be approved in writing by Billy Casper" (hereinafter, the "Casper Endorsement") worldwide in connection with the promotion of BCG.  [*Id.*]  The Agreement specified that payments to Mr. Casper would be made payable by check to Mr. Casper at a P.O. Box in Chula Vista, California, and provided for notices under the Agreement to Mr. Casper be made to the same P.O. Box.  [*Id.* at 31, 33.]  The Agreement provides for notices to BCG at its office in Vienna, Virginia, and contains a provision stating that it is "governed by the laws of the Commonwealth of Virginia regardless of the fact that any of the parties hereto may or may [sic] become a resident of a different state of jurisdiction."  [*Id.* at 33, 34.]

In 2005, Mr. and Mrs. Casper moved to Utah.  [Doc. No. 18-3 at 27.]  In 2013, when the end of the original ten-year term approached, there was some discussion between BCG and Mr. Casper about extending it [*see, e.g.,* Doc. No. 18-3 at 15], but much of the dispute in this case concerns whether the Agreement terminated effective March 31, 2013, or

whether it continued in effect for an additional ten-year term on some other lesser term. There does not appear to be any dispute, however, that after March 31, 2013, BCG continued to make the same monthly payments to Mr. Casper as it had made to him during the original ten-year term of the Agreement.  [Doc. No. 12 at ¶ 62; Doc. No. 21 at 8.]

On February 7, 2015, Mr. Casper died.  [Doc. No. 12 at ¶ 37.]  After Mr. Casper's death, BCG continued to make monthly payments under the Agreement via wire transfer payments to Mrs. Casper's account at a bank that the FAC states is located in Chula Vista, California.  [*Id.* at ¶ 30.]  Notwithstanding these payments, in the FAC Mrs. Casper contends that the Agreement terminated effective April 1, 2013.  [*Id.* at ¶¶ 41, 46(a).]

Needless to say, the relationship between Mrs. Casper and BCG deteriorated at some point after Mr. Casper's death.  On September 13, 2019, Mrs. Casper's attorney sent a letter to BCG asserting Mrs. Casper's position that the Agreement was not extended beyond the original ten-year period, stating that BCG's continued payments to Mrs. Casper under the parameters of the Agreement were unsatisfactory, and asking BCG to contact him concerning a new license agreement or the purchase of Mr. Casper's estate's intellectual property.  [Doc. No. 18-3 at 16.]  The letter also stated that such discussions "would be far preferable to [Mrs. Casper] than triggering the terms of section 4[1] of the Agreement and pursuing legal claims based on Mr. Casper's Right of Publicity."  [*Id.*]

On September 30, 2019, BCG filed a declaratory judgement action in the Circuit Court of Fairfax County, Virginia (the "Virginia Lawsuit"), against Mrs. Casper as representative of Mr. Casper's estate (the "Estate") and trustee of the Shirley Ann Casper Family Trust (the "Trust").  [Doc. No. 18-3 at 61.]  The complaint in the Virginia Lawsuit asserted one claim for declaratory judgment that the Agreement was renewed in 2013 and would expire on March 31, 2023.  [*Id.* at 66.]  BCG did not immediately serve the complaint in the Virginia Lawsuit on Mrs. Casper and continued to make monthly payments to Mrs.

---

[1] Section 4 of the Agreement concerns the cessation of use of the Casper Endorsement upon expiration or termination of the Agreement.

Casper.  On January 28, 2020, the summons and complaint in the Virginia Lawsuit were served on Mrs. Casper by personal service at her residence in Mapleton, Utah.  [*Id.* at 79.]

On January 17, 2020, Mrs. Casper, in her capacity as executrix of the Estate and trustee of the Trust, filed the original complaint in this lawsuit.  [Doc. No. 1.]  The original complaint asserted three claims: (1) declaratory relief that the Agreement terminated on either March 31, 2013 or February 1, 2020, or that it would terminate on March 31, 2020; (2) breach of the Agreement by BCG; and (3) unjust enrichment.  [*Id.*]  On February 12, 2020, BCG moved to dismiss or transfer the original complaint to Virginia [Doc. No. 4], and after Mrs. Casper removed the Virginia Lawsuit to federal court [Doc. No. 18-3 at 24], BCG filed an amended motion [Doc. No. 11].  In response to the motion to dismiss in this case, Mrs. Casper filed the FAC.  [Doc. No. 12.]  Meanwhile in the Virginia Lawsuit, Mrs. Casper filed a motion to dismiss for lack of personal jurisdiction.  [Doc. No. 21-7.]

In the FAC, Mrs. Casper sues only in her capacity as trustee of the Trust.  The FAC adds claims for trademark infringement, unfair competition under California Business and Professions Code § 17200, and for anticipatory breach of contract by BCG based on allegations that BCG had indicated on February 24, 2020, that it was considering cessation of its monthly payments to Mrs. Casper.  [Doc. No. 12 at ¶ 62.]  BCG now moves to dismiss the FAC or transfer it to the Eastern District of Virginia.  In its motion, BCG makes three arguments for dismissal or transfer of this case in favor of the Virginia Lawsuit: (1) that dismissal is warranted pursuant to the factors set forth in *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491 (1942); (2) that the first-to-file rule requires dismissal; and (3) that this case should be transferred to the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a).  Because the first-to-file rule applies, the Court declines to consider the other arguments at this time.

## II.   Discussion

"The first-to-file rule was developed to serve the purpose of promoting efficiency well and should not be disregarded lightly." *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991) (internal quotation marks omitted).  Under the "first-to-file" rule,

"when cases involving the same parties and issues have been filed in two different districts, the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy." *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997).

When considering a motion invoking the first-to-file rule, "a court analyzes three factors: chronology of the lawsuits, similarity of the parties, and similarity of the issues." *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015). Plaintiff does not appear to dispute that these factors are satisfied. The Virginia Lawsuit was filed almost four months before this case. Although the parties spend an inordinate portion of their briefs arguing about whether the Estate actually exists and whether the Estate or the Trust is a proper party in this dispute, Mrs. Casper (regardless of the capacity in which she is appearing) and BCG are parties in both suits. *See id.* at 1240 (noting that "the first-to-file rule does not require exact identity of the parties"). Finally, at their core, both cases concern the contractual relationship between BCG and Mrs. Casper (either as executrix or trustee). *See Awarepoint Corp. v. KMW Grp., Inc.*, No. 11-CV-2893-H (RBB), 2012 WL 13028110, at *2 (S.D. Cal. Jan. 26, 2012) (finding similarity of the issues weighed in favor of the application of the first-to-file rule because "at their core, both actions concern the contractual relationship between [the parties]"). Thus, all of the prerequisites for application of the first-to-file rule exist here.

Plaintiff argues, however, that exceptions to the first-to-file rule weigh against its application. Cases in which exceptions to the rule have been allowed generally "stand for the proposition that district court judges can, in the exercise of their discretion, dispense with the first-filed principle for reasons of equity." *Alltrade*, 946 F.2d at 628. "Exceptions to the first-to-file rule include where the filing of the first suit evidences bad faith, anticipatory suits, and forum shopping." *Selection Mgmt. Sys., Inc. v. Torus Specialty Ins. Co.*, No. 4:15-CV-05445-YGR, 2016 WL 304781, at *2 (N.D. Cal. Jan. 26, 2016) (citing *Alltrade*, 946 F.2d at 628). Plaintiff contends that each of these three exceptions apply and

also argues that practical reasons favor litigating this dispute in this district.  As discussed below, the Court is not persuaded.

### A.    Bad Faith

Plaintiff contends that BCG acted in bad faith by filing the Virginia Lawsuit in a jurisdiction without on-line case access shortly after Plaintiff tried to initiate negotiations. Plaintiff also relies on conversations her counsel had with BCG after both lawsuits were filed as evidence of BCG's bad faith.  Yet, "[f]iling first to establish [a] tactical advantage over the defendant is not 'bad-faith.'  Nor is bad faith established merely because one of the parties engaged in good-faith negotiations decides to file suit." *Therapy Stores, Inc. v. JGV Apparel Grp., LLC*, No. 4:16-CV-02588-YGR, 2016 WL 4492583, at \*5 (N.D. Cal. Aug. 26, 2016) (internal citation omitted).  "Where courts have found bad faith, the parties have discussed or begun preparing for litigation and one party has made an affirmative representation inducing the other party not to file its suit first." *U.S. Bank, N.A. v. Sun Life Assurance Co. of Canada*, No. CV1700670BROASX, 2017 WL 5957644, at \*10 (C.D. Cal. June 16, 2017).   There was no such affirmative representation by BCG here. Moreover, considering the entirety of the record, the Court does not find any bad faith by BCG with respect to its filing of the Virginia Lawsuit or its conduct toward Plaintiff since the lawsuits were both filed.  Accordingly, this exception to the first-to-file rule does not apply.

### B.    Anticipatory Suit

Plaintiff also characterizes the Virginia Lawsuit as an anticipatory suit.  "Generally, a suit is anticipatory when the plaintiff files suit upon receipt of specific, concrete indications that a suit by the defendant is imminent." *Youngevity Int'l, Inc. v. Renew Life Formulas, Inc.*, 42 F. Supp. 3d 1377, 1383 (S.D. Cal. 2014).  Here, BCG filed the Virginia Lawsuit after receiving the letter from Plaintiff's counsel stating Plaintiff's position that the Agreement had terminated on March 31, 2013.  [Doc. No. 18-3 at 16.]  "Mere receipt of a letter from an opposing party suggesting the possibility of legal action at some undefined point in time if settlement is not reached does not constitute a specific, imminent

threat of legal action." *Selection Mgmt. Sys.,* 2016 WL 304781, at *3 (internal quotation marks omitted); *see also Youngevity Int'l*, 42 F. Supp. 3d at 1384 (holding that the plaintiff's argument that the defendant indicated that it was available to discuss a possible resolution and instead "rushed off to the courthouse to reserve a jurisdiction in its home forum," did not support plaintiff's position that the lawsuit was anticipatory). "[A] case filed to preserve rights is distinguishable from an anticipatory suit." *Awarepoint*, 2012 WL 13028110, at *3. Accordingly, the anticipatory suit exception to the first-to-file rule does not apply.

### C.    Forum Shopping

Plaintiff also argues that BCG was forum shopping, but it is unclear on what grounds other than that it filed suit first in its home forum. "Forum shopping occurs when a plaintiff chooses a forum in order 'to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the ... forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum.'" *U.S. Bank*, 2017 WL 5957644, at *12 (quoting *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 695 (9th Cir. 2009) (internal quotation marks omitted)). "Courts have found that 'anticipatory suits are disfavored because they are aspects of forum-shopping.'" *Therapy Stores, 2016 WL 4492583, at *5 (*citing *Alltrade*, 946 F.2d at 628)). None of the above indicia of forum shopping are present here.

BCG did not pick a random forum with no connection to the dispute; it filed in its home forum and in the state under whose laws the Agreement is governed. Indeed, Plaintiff admits that Virginia was a potential forum that she considered for this lawsuit. [Doc. No. 21 at 31 ("Mrs. Casper had three potential forums to choose from: California, Virginia and Utah.").] Moreover, Plaintiff's arguments about the convenience (or lack thereof) of litigating in Virginia are wholly disingenuous considering that she chose not to file in her home forum and argues that BCG would not be inconvenienced to litigate on the other side

of the country.  In sum, BCG did not engage in forum shopping here.  Thus, this exception to the first-to-file rule does not apply either.

### D.  Convenience Factors

Finally, Plaintiff argues that "balancing the interests of the real parties in interest dictates the case be litigated here."  [Doc. No. 21 at 24.]  Plaintiff's primary argument for this is that she lives on a fixed income and occasionally spends time in San Diego with her family, while BCG executives regularly travel the country managing golf courses.  The Court is not persuaded that these facts warrant relaxation of the first-to-file rule.

Although "[i]n appropriate cases it would be relevant for the court in the second-filed action to give consideration to the convenience of the parties and witnesses. . . . normally the forum non conveniens argument should be addressed to the court in the first-filed action."  *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 96 (9th Cir. 1982).  Thus, "[t]he Ninth Circuit has cautioned that relaxing the first-to-file rule on the basis of convenience is a determination best left to the court in the first-filed action."  *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1293 (N.D. Cal. 2013); *see also Youngevity Int'l*, 42 F. Supp. 3d at 1384 ("Although the parties ardently dispute which forum is the most convenient, the Court will not resolve the dispute because the respective convenience of the two courts should be addressed by the court in the first-filed action.").  Accordingly, the Court need not even consider this argument.

Regardless, even if the Court were to consider this argument, the idea that San Diego, where neither party is located, is more convenient than Virginia, where BCG has been headquartered since the Agreement was first executed, simply because Plaintiff spends a few months a year here defies credulity.  Indeed, had BCG sued Plaintiff in this forum, Plaintiff would have a credible argument that this Court lacks personal jurisdiction over her because she has not lived here since Mr. Casper died and because of the lack of connection of California to this dispute.  Further, the fact that Mrs. Casper's "health is frail" and that she lives on a fixed income hardly support a finding that California, a venue hundreds of miles from her home and thousands of miles from BCG's office, is more

convenient forum for the litigation of this dispute than Virginia.  Thus, practical considerations and convenience are more likely to favor the first-filed action, and in any event do not support departure from the first-to-file rule to allow the litigation to proceed in this forum.

### E.   Dismissal, Transfer or Stay

BCG asks the Court dismiss this case pursuant to the first-to-file rule.  However, "the Ninth Circuit has instructed that jurisdictional concerns in the first-filed court counsels against outright dismissal of an action."  *U.S. Bank*, 2017 WL 5957644, at *14 (internal quotation marks omitted); *see also Alltrade*, 946 F.2d at 629 (affirming district court's application of first-to-file rule but reversing decision to dismiss second filed case because of pending jurisdictional issues in the first filed case).  Accordingly, the Court declines to dismiss this action at this stage and instead will stay this case pending resolution of Plaintiff's motion to dismiss for lack of personal jurisdiction in the Virginia Lawsuit.  If Plaintiff's motion is denied, the Court will transfer this case to the Eastern District of Virginia.  If Plaintiff's motion is granted and the first filed action is dismissed, BCG may re-file its motion to dismiss for failure to state a claim at that time.

### III.   Disposition

For the foregoing reasons, it is hereby **ORDERED** that BCG's motion is **GRANTED IN PART**.  This case is **STAYED** pending final resolution of Plaintiff's motion to dismiss for lack of personal jurisdiction in the first filed lawsuit.  The parties shall notify the Court within three days of a ruling on Plaintiff's motion in the Virginia Lawsuit.

It is **SO ORDERED**.

Dated:  April 24, 2020

Hon. Cathy Ann Bencivengo
United States District Judge